UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

DAGOBERTO GONZALEZ,
JOSE VIZCAINO CRUZ, and
SANTO AGRAPINO TEJADA MOTA,

Defendants.

20 Cr. 335 (JSR)

ORDER ENDORSED

## DECLARATION

I, KEDAR S. BHATIA, hereby declare under the penalties of perjury and pursuant to 28 U.S.C. § 1746:

1. I am an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Southern District of New York (the "USAO"). I have been personally involved in this investigation, and I am the AUSA principally responsible for prosecuting this matter. I base this affidavit on my personal recollection, my communications with others referenced herein, my review of emails, notes, and records from the USAO, and my review of records from the Drug Enforcement Administration ("DEA"), the agency investigating this matter.

2. As set forth below, in March 2020, law enforcement officers seized six cellphones (the "Cellphones") from defendants Dagoberto Gonzalez, Jose Vizcaino Cruz, and Santo Agrapino Tejada Mota following their involvement in a narcotics transaction. I took steps to have the Cellphones extracted by USAO staff beginning in April 2020. I disclosed the existence of the Cellphones to defense counsel in the first production of discovery in July 2020, and I noted the ongoing extraction efforts during later communications with defense counsel. However, as set forth below, the Government erred in not generating and producing the cellphone extractions in a

1

timely manner, including by not more frequently following up with Government personnel regarding the status of creating and transmitting cellphone extractions and not reviewing and producing the cellphone extractions promptly once they were available. The failure to timely produce the cellphone extractions was inadvertent, and I did not intentionally seek to delay their production or to hide the existence of the extractions.

3.     On March 20, 2020, law enforcement officers with the DEA arrested the defendants for their roles in a narcotics conspiracy. On or about the same date, each defendant was advised of his *Miranda* rights and agreed to speak with law enforcement officers. Gonzalez gave officers written consent to search one cellphone (the "Gonzalez Phone"); Tejada Mota gave officers written consent to search one cellphone (the "Tejada Mota Phone"); and Vizcaino Cruz gave officers verbal consent to search four cellphones ("Vizcaino Cruz Phone-1" through "Vizcaino Cruz Phone-4").[1] Vizcaino Cruz stated to officers, in substance and in part, that Vizcaino Cruz Phone-3 effectively had nothing on it, which was largely confirmed by officers in Vizcaino Cruz's presence. Agents therefore provided Vizcaino Cruz written consent to search forms for Vizcaino Cruz Phones-1, 2, and 4, which forms Vizcaino Cruz executed.

4.     On April 14, 2020, I contacted a USAO Investigative Analyst (the "Analyst"), who regularly processes seized cellphones and generates cellphone extractions, to find out whether the USAO was able to process cellphones at that time given the onset of the COVID-19 pandemic. The Analyst responded that he was able to process cellphones at his home. The same day, I emailed one of the case agents at the DEA ("Agent-1") to ask Agent-1 to deliver the Cellphones to the

---

[1] The Tejada Mota Phone is marked in DEA records and discovery as DEA Exhibit No. N-120; Vizcaino Cruz Phone-1 is marked as N-121; Vizcaino Cruz Phone-2 is marked as N-122; Vizcaino Cruz Phone-3 is marked as N-123; Vizcaino Cruz Phone-4 is marked as N-124; and the Gonzalez Phone is marked as N-125.

Analyst at his home so that cellphone extractions could be generated. Agent-1 responded agreeing to deliver the Cellphones.

5. On June 30, 2020, a grand jury returned an indictment charging each defendant with one count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, 100 grams and more of carfentanil (an analogue of fentanyl), and 500 grams and more of cocaine, in violation of 21 U.S.C. § 846.

6. On July 10, 2020, the Court held a telephonic arraignment and initial pretrial conference. At the conference, I stated, among other things, that the Government would produce discovery that day, at which time discovery would be completed. Although the discovery produced that day included records related to the Cellphones and consent to search forms, as set forth below, I did not make clear that the Government had not yet extracted the contents of the Cellphones and that such discovery would still need to be produced to the defendants once it became available.

7. The same day, on July 10, 2020, I made a discovery production to defense counsel. The production included all discovery in the Government's possession at that time. Among other things, I produced to each defendant that defendant's consent to search form(s) relating to the Cellphones and a redacted DEA Report of Investigation (the "ROI") reflecting each defendant's statements to law enforcement and describing the devices seized from each defendant. The ROI itemized the various DEA exhibits in this matter and gave a description of each Cellphone, the name of the DEA agent who recovered the device, the name of another DEA agent who was witness to the recovery, and the date upon which the devices were delivered by DEA agents to the DEA evidence custodian, which was April 6, 2020. On August 18, 2020, I produced to all defendants a version of the ROI that disclosed all of the DEA exhibits, including the Cellphones and consent, waiver, and recording declination forms belonging to all defendants.

8.  In or about early August 2020, after counsel for Tejada Mota contacted another AUSA regarding this case, including the content of the Cellphones, I learned that the Cellphones had not been delivered to the Analyst and thus were never extracted. On August 10, 2020, after chambers contacted the parties to ask whether the defendants anticipated filing any motions, the other AUSA and counsel for Tejada Mota contacted me, and I messaged Agent-1 to ask if the Cellphones could be delivered to the Analyst.[2] On August 11, 2020, another agent from the same DEA group ("Agent-2") delivered the Cellphones to the Analyst.

9.  On August 20, 2020, I received an email from the Analyst saying, in substance and in part, that the cellphone extractions for this case were complete, except for Vizcaino Cruz Phone-3.[3] The Analyst asked if I wanted copies of the cellphone extractions, and I asked if he could send one copy to me and send one copy to the DEA agents. The Analyst created a drive for me with copies of the extractions at that time. However, the Analyst did not send me the copy, nor did I pick up the copy from the Analyst, until February 2021 when I followed up with the Analyst, as described below.

10. On September 29, 2020, all of the Cellphones except Vizcaino Cruz Phone-3 were returned to Agent-2. On or about the same day, the Analyst provided Agent-2 with a drive containing the cellphone extractions for the Cellphones except Vizcaino Cruz Phone-3.

---

[2] Based on my review of email correspondence from August 10, 2020, I believe I had a telephone call with Agent-1 at some point after our email communication in April 2020 and before August 10, 2020, regarding delivering the Cellphones to the Analyst. Among other times, I typically would have discussed with agents any outstanding discovery, including electronic devices, when preparing to make an initial discovery production, as I did on July 10, 2020.

[3] In email correspondence in August 2020, the Analyst stated that he was waiting to extract Vizcaino Cruz Phone-3 because he did not have an executed consent form or search warrant for that phone. However, as noted above, law enforcement officers had obtained verbal consent to search that phone. In any event, Vizcaino Cruz Phone-3 could not be extracted at that time because the software used by the USAO to extract cellphones at that time was not capable of creating a cellphone extraction for that particular model.

11.     On December 4, 2020, counsel for Tejada Mota contacted me regarding various aspects of the case, including the Cellphones. Because I had not yet received the cellphone extractions for any of the Cellphones, I communicated with Agent-2 and asked if Agent-2 could check on the status of the cellphone extractions. On December 8, 2020, Agent-2 sent an email to the Analyst, copying me, and asked about the remaining Cellphone for this case, *i.e.*, Vizcaino Cruz Phone-3. On December 18, 2020, the Analyst responded to Agent-2 and I saying that within the last two weeks the cellphone extraction service used by the USAO had added support for the model of Vizcaino Cruz Phone-3, so he may be able to conduct the extraction soon. On or about December 21, 2020, the Analyst responded to Agent-2 and I that he was able to successfully extract Vizcaino Cruz Phone-3, and that a copy of the extraction would be available to be picked up the next day.

12.     On February 2, 2021, after I had not personally received or picked up a copy of the cellphone extractions for this matter, I messaged the Analyst to ask about the status of those extractions. The Analyst responded that a copy of the extractions was available for me in his office.

13.     In or about February 2021, on a day when I was present in my office, I received a drive with cellphone extractions for Vizcaino Cruz Phones-1, 2, and 4 and the Gonzalez Phone.[4] I determined that I needed to review the cellphone extractions for material relevant to the case, *Brady* material, and records that might warrant a protective order, among other things, and to produce the extractions to the defense. However, due to the volume of commitments in other cases I was handling, I did not promptly review the extractions and produce the extractions to the defense.

---

[4] I believe the drive that I received in February 2021 contained only four of the six cellphone extractions because it was a drive created prior to when cellphone extractions for the Tejada Mota Phone and Vizcaino Cruz Phone-3 were generated.

5

14. In or about March and April 2021, I had conversations with counsel for Tejada Mota about possible pretrial resolutions to the case. During at least one of those calls, on March 12, 2021, counsel and I discussed various facets of the case and I relayed that the cellphone extractions were forthcoming.

15. In mid-May 2021, I was preparing to go on parental leave and was briefing another AUSA joining the case. At that time, I realized that the cellphone extractions had not yet been produced and needed to be produced immediately. On Tuesday, May 18, 2021, I emailed counsel for the defendants to notify them that the Government was preparing to produce cellphone extractions to the defense.

16. The same week, I communicated with counsel for Vizcaino Cruz and Tejada Mota, with whom I had previously had discussions about pretrial resolutions. When counsel for those defendants sought the Government's view on an adjournment of trial to complete discussions about a possible pretrial disposition and in light of the forthcoming cellphone extractions, I told them the Government consented to such an adjournment. I also communicated with counsel for Gonzalez, who joined in the request for an adjournment.

17. During the week of May 17, 2021, I reviewed the cellphone extractions that I had received in February 2021 and identified that I had extractions for only four out of the six Cellphones. I communicated with the Analyst and another USAO Investigative Analyst to get copies of the extractions for the remaining Cellphones, *i.e.*, the Tejada Mota Phone and Vizcaino Cruz Phone-3. On May 21, 2021, I received copies of cellphone extractions for both cellphones.

18. On Monday, May 24, 2021, a USAO paralegal specialist loaded cellphone extractions for all six Cellphones to hard drives and notified defense counsel that the discovery was available. In total, the extractions for the six Cellphones totaled approximately 30 GB of data.

19.   I have reviewed the cellphone extractions produced for all of the Cellphones. Because the cellphone extractions contain Spanish-language communications, the Cellphones have been further reviewed by a DEA agent proficient in Spanish. The Government has not identified any *Brady* information on the Cellphones. Taken together, the Cellphones contain records, namely text message conversations and photographs, relevant to the narcotics conspiracy charged in this case.

20.   As set forth above, I sought to have the Cellphones extracted, reviewed, and produced, and I disclosed the seizure of the Cellphones to defense counsel in the first production of discovery and in subsequent communications about the case. However, I erred in not more frequently communicating with and facilitating communication among USAO staff and law enforcement officers regarding the status of the cellphone extractions and transmitting those extractions; not setting internal deadlines for producing the extractions; and not reviewing and producing the cellphone extractions promptly once they were available. The failure to timely produce the cellphone extractions was inadvertent, and I did not intentionally seek to delay their production or hide the existence of the extractions.

Dated:   June 4, 2021
         New York, New York

                                                    _____
                                                    Kedar S. Bhatia
                                                    Assistant United States Attorney

6/14/21

Since the defense does not dispute that the foregoing delays by the Government were the product of inadvertence rather than bad faith, and since the defense was not prejudiced thereby, the Court will not impose sanctions for these unfortunate delays.

SO ORDERED.
/s/ J.S.R.
   JSR